# UNITED STATES *v.* MILLER.
## SAME *v.* SAME.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

Nos. 607, 608. Argued January 9, 1912.—Decided February 26, 1912.

Posting of rates as required by § 6 of the Interstate Commerce Act is not a condition of making the tariff legally operative or keeping it in operation.

The non-posting of rates by an interstate carrier will not relieve a shipper from the penalty for violating the Interstate Commerce Act by accepting rebates.

Publication and posting, in the sense in which those terms are used in the Interstate Commerce Act, are essentially different.

One provision of an act will not be so construed as to defeat the object of the act; and the non-posting, or removal of, schedules of rates, will not disestablish a published rate.

Congress will not be presumed to have intended that the mere non-posting of schedules of rates in the depots of carriers, or the removal thereof after posting, should disestablish or suspend a rate, which the act provides shall only be changed in the mode prescribed. *Kansas City Southern Ry. Co.* v. *Albers Commission Co., ante,* p. 573.

THE facts, which involve the construction of certain provisions of the Interstate Commerce Law as amended by the Hepburn Act of 1906 to regulate commerce, are stated in the opinion.

*The Solicitor General* for the United States:

Where the carriers have done everything prescribed by the statute with regard to a through joint rate for transportation over a through route under a common arrangement, except posting the schedules in the depots, a shipper who knows what the established rate is, is guilty of a vio-

lation of § 1 of the Elkins Act as amended by the Hepburn Act if he knowingly solicits, accepts, and receives a concession from that rate.

Proof of a violation of the act by a shipper would be rendered practically impossible, and certainly senselessly difficult, laborious, and expensive, if in every prosecution primary evidence of posting the schedules and keeping them posted in every depot were required. The shipper indeed might secure immunity by himself removing the schedule from some depot before applying for and getting his concession, as the established rate would then no longer be in existence.

Every purpose of the law would be defeated if rates existed by so precarious a tenure.

The question has in effect been determined in *Texas and Pacific Ry. Co.* v. *Cisco Oil Mill,* 204 U. S. 449. Although that case concerns the construction of the section in a civil cause, that affords no reason for saying that the authoritative construction of the statute is not to be applied in a criminal case. *United States* v. *Keitel,* 211 U. S. 370, 392.

As early as 1892, in *United States* v. *Howell,* 56 Fed. Rep. 21, 29, it was held as against shippers that the posting of rates in the depots was not essential to their establishment.

In no Federal case, other than the one at bar, has the posting in depots been held essential to the establishment of the rate.

The amendments made to the law since the *Cisco Case* was decided were not designed to weaken it, but to guard it more carefully than before against rebates, concessions, and discriminations.

In this case there is charged in the indictment a rate established by the carrier, knowledge by the defendants of what the rate was, and the solicitation and acceptance of a lesser rate.

The requirements of the statute have been fulfilled, and the indictment should be sustained.

*Mr. Alexander A. Lawrence,* with whom *Mr. M. Hampton Todd* and *Mr. William W. Osborne* were on the brief, for defendant in error:

An indictment of a shipper for accepting a concession from a freight rate is properly quashed when there is no averment therein that the rate in question had been posted in the freight station where the freight was received or elsewhere.

As a condition of criminality, the statute prescribes that the shipper must violate a tariff rate published as prescribed by the act. The act prescribes as a part of the publication that the tariffs should be posted in two conspicuous places where freight is received. It is admitted that the rates alleged to be violated were not so posted. Where the statute prescribes a method of publication the Government may not in order to secure a conviction allege and show that it had been published only in part. *Texas Railway Co.* v. *Cisco Oil Mill,* 204 U. S. 449; *Armour Packing Co.* v. *United States,* 209 U. S. 72.

Neither the *Cisco Case, supra,* nor the *Abilene Cotton Co. Case,* 204 U. S. 437, construed the penal provisions. While neither the filing nor publication of the rate is a condition precedent to its establishment, validity, or effectiveness from a civil standpoint, both filing and publishing are, under the Hepburn Act, conditions precedent to the penal operation of the statute with respect to the shipper.

The distinction between an established and a published rate and the consequences of a departure therefrom by a shipper are clear. See *Hardaway* v. *State,* 1 Ga. App. 150.

The omission of an essential allegation is fatal to the indictment. *United States* v. *Cook,* 17 Wall. 174; *United States* v. *Wood,* 145 Fed. Rep. 409; *Camden Iron Works* v. *United States,* 158 Fed. Rep. 564.

Counsel for the Government cited *United States* v. *Howell,* 56 Fed. Rep. 21; *Chicago R. R.* v. *United States,* 162 Fed. Rep. 838; *The Cisco Case,* 204 U. S. 449, 452, and

*United States* v. *N. Y. Cent. & Hudson R. R. R.*, 212 U. S.
509, 515, and 157 Fed. Rep. 293, but neither of these cases
involves the construction of the act in reference to posting.
It is established by them that a carrier which participates
in a rate filed or published by another carrier is by virtue
of the act made liable to the penal provisions of the stat-
ute for any concession granted.

MR. JUSTICE VAN DEVANTER delivered the opinion of
the court.

These were indictments under that provision of the act
to regulate commerce, June 29, 1906, 34 Stat. 584, c. 3591,
which makes it a misdemeanor for a shipper knowingly to
solicit, accept or receive, from any common carrier subject
to the act, a rebate or concession whereby property is
transported in interstate commerce "at a less rate than
that named in the tariffs published and filed by such
carrier, as is required by said act;" and the question pre-
sented for decision is, whether compliance with the re-
quirement in respect of the posting of tariffs in the depots,
stations or offices of the carrier is essential to bring a tariff
within the descriptive terms of that provision. We say
this is the question for decision, because it appears from
the record that the Circuit Court, in sustaining demurrers
to the indictments, placed its decision solely upon the
ground that they did "not allege that the schedules and
tariffs alleged to have been violated were posted in the
manner required by law," and because upon these direct
writs of error we must accept that court's interpretation
of the indictments and confine our review to the question
of the construction of the statute involved in its decision.
*United States* v. *Keitel*, 211 U. S. 370, 398; *United States* v.
*Kissell*, 218 U. S. 601, 606.

That the act imposes upon common carriers subject to
its provisions the duty of establishing in a prescribed mode
the rates, whether individual or joint, to be charged for

the transportation in interstate commerce of property over their lines, and that the rates so established are obligatory alike upon carrier and shipper, and must be strictly observed by both until changed in the mode prescribed, are propositions which are not only plainly stated in the act, but settled by repeated decisions of this court. In speaking of the rates which must be thus observed, the act variously designates them as the rates "named in the tariffs published and filed," the "charges which have been filed and published," the "charges which are specified in the tariff filed and in effect at the time," the "regular charges . . . . as fixed by the schedules of rates provided for in this act," and the "regular rates then established and in force," but in none of these expressions is there any suggestion that posting is a necessary step in establishing rates, that is, in making them legally operative. Of course, these expressions, although differing in words, are identical in meaning, and to ascertain that meaning recourse must be had to § 6 of the act, which, at the time of the offenses charged in these indictments (1907–8), declared:

"Sec. 6. That every common carrier subject to the provisions of this Act shall file with the Commission created by this Act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established [meaning adopted]. . . . Such schedules shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently in-

spected. . . . *Provided*, That the Commission may, in its discretion and for good cause shown, . . . modify the requirements of this section in respect to publishing, posting, and filing of tariffs, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions. . . . No carrier, unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, as defined in this Act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this Act. . . ."

It is the contention of the defendants that a tariff is not published in the sense in which the act uses that term unless printed copies are "kept posted in two public and conspicuous places in every depot," etc., and it was this contention that prevailed in the Circuit Court. But, in our opinion, it is not sound. Publication and posting in the sense of the act are essentially distinct. This is the import of the provision that the requirements relating to "publishing, posting and filing" may be modified by the commission in special circumstances, for if publishing included posting, mention of the latter was unnecessary. And from all the provisions on the subject it is evident that the publication intended consists in promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined upon the carrier, while the tariff remains operative, as a means of affording special facilities to the public for ascertaining the rates in force thereunder. In other words, publication is a step in establishing rates, while posting is a duty arising out of the fact that they have been established. Obviously, therefore, posting is not a condition to making a tariff legally operative. Neither is it a condition to the continued existence of a tariff once legally established. If it were, the inadvertent or mischievous destruction or

removal of one of the posted copies from a depot would disestablish or suspend the rates, a result which evidently is not intended by the act, for it provides that rates once lawfully established shall not be changed otherwise than in the mode prescribed.

Like views of the posting clause were expressed in *Texas and Pacific Railway Co.* v. *Cisco Oil Mill*, 204 U. S. 449, and upon further consideration we perceive no reason for departing from them. See also *Kansas City Southern Railway Co.* v. *Albers Commission Co., ante,* p. 573.

Whether, by failure to comply with that clause, a carrier becomes subject to a penalty is apart from the present case and need not now be considered.

The judgments are reversed, and the cases are remanded for further proceedings in conformity with this opinion.

*Reversed.*