[Priebe v. Southern Railway Company.]

# Priebe *v.* Southern Railway Company.

## *Assumpsit.*

(Decided November 7, 1914.   66 South. 573.)

1. *Assumpsit; Action; Indebitatus.*—A shipper's claim against a carrier for freight overcharges, being founded upon an executed consideration, may be declared upon on the common indebitatus counts.

2. *Carriers; Rates; Milling in Transit.*—Shippers are not entitled as a matter of right to mill grain in transit, and forward the milled product under the through rate in force on the grain from the point of origin to the place of ultimate destination; "milling in transit" is a special privilege allowed at certain designated points, whereby the carrier, having transported the grain to the shipper's mill, agrees that the shipper may re-ship the milled product without charge to certain designated points, and for which extra compensation is usually exacted by interstate carriers under the direction and control of the interstate commerce commission.

3. *Evidence; Documentary; Tariff's Schedule.*—In an action to recover overcharges on grain shipped under a milling in transit privilege at J., the railroad company being required by a subpoena duces tecum to produce its milling in transit schedules at that point, could produce a printed tariff schedule showing that milling in transit was allowed at J., where it was shown to be identical with the schedules kept in the railroad office at that point for the information of the public, as required by law, as an admission for the purpose of the case, and not to be excluded as an attempt to prove the schedules on file in the office of the Interstate Commerce Commission, otherwise than by a certified copy.

4. *Same; Presumptions; Performance of Duty.*—Railroad tariff schedule posted at their offices will be presumed to be identical with those filed with the interstate commerce commission in the absence of any ground for suspicion.

5. *Appeal and Error; Review; Non-Suit.*—Where the bill of exceptions states that defendant objected to certain evidence, the rulings on which had been set out, that the objections were sustained, that plaintiff duly excepted, and thereupon plaintiff took a non-suit with bill of exceptions, the questions of evidence so presented by the record were reviewable on appeal.

6. *Same.*—Under section 3017, Code 1907, the sustaining of a demurrer to one count of the complaint, the other counts of which sustained all of plaintiff's evidence, could not be reviewed, where the bill of exceptions after setting out the ruling on the admission of evidence, stated that defendant's objection to the testimony was sustained, and that plaintiff duly excepted and took a non-suit with bill of exception, as the statute does not authorize a review of ruling which did not superinduce the non-suit.

(Sayre and de Graffenried, JJ., dissenting in part.)

APPEAL from Calhoun Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Assumpsit by H. Priebe against the Southern Railway Company. Judgment for defendant and plaintiff appeals. Reversed and remanded.

Transferred from Court of Appeals.

ROSS BLACKMON, for appellant.

KNOX, ACKER, DIXON & STERNE, for appellee.

SAYRE, J.—We understand count 2, of appellant's original complaint to be a count in special assumpsit intending a recovery for appellee's breach of its promise to refund payments made by appellant on account of freight charges on certain shipments of meal. Demurrer to this count was sustained, and the ruling is assigned for error.

The theory of appellant's case, as appeared in the further progress of the trial, was that appellee, having transported corn (whether by interstate or intrastate shipments does not appear in the count) to appellant's mill under an agreement for a "milling in transit" privilege, had unlawfully exacted an additional charge when appellant tendered the milled product for further shipment. In pursuit of this theory the count, by way of showing the consideration for appellee's alleged promise, averred that appellant shipped corn over appellee's line to his "plant" at Jenifer, Ala., and that these shipments were made under a tariff schedule of freight rates which applied to "milling in transit" shipments; and the count proceeds: "It was agreed and understood that the defendant would reship the meal for the plaintiff, without any extra charges therefor, to certain points designated in said agree-

[Priebe v. Southern Railway Company.]

ment. Plaintiff avers that he ground the corn shipped under the contract with the defendant into meal, and reshipped the same to points designated by the terms of said contract, to which points the defendant was bound, by the terms of this contract, to haul or transport said meal or carry said meal without extra or additional charges."

The promise, for the breach of which appellant sued, not importing or implying a consideration (rather, the implication is of an unlawful agreement; that is, if we may travel outside the count and assume that appellee was a common carrier), it was necessary that the count should expressly state the particular consideration upon which it was founded. This count does not show what shipments were made under the alleged "milling in transit" privilege, nor the ultimate destination of such shipments. We may infer, but it is not averred, that appellant had paid lawful charges according to the through rate in force on the corn from the point of origin to the place of ultimate destination, and, in the absence of such averment, it does not appear, except by inconclusive inference, which the court will not draw in favor of the pleader, that the amounts appellee promised to repay were charges in excess of the lawful rate. For this, and other reasons which might be assigned, we think the demurrer was properly sustained.

Moreover, where a plaintiff seeks, after nonsuit, to review the entire proceeding in the trial court, the doctrine of error without injury is applied to rulings on the pleadings to an extent perhaps that has not been practiced in cases where an appeal is taken from final judgment in favor of the defendant.—*Andrews v. Hall*, 132 Ala. 320, 31 South. 356; *Tobias v. Josiah Morris & Co.*, 132 Ala. 267, 31 South. 498; *Zirkle & Moore v.*

*Jones,* 129 Ala. 444, 29 South. 681; *Brown v. Commercial Fire Ins. Co.,* 86 Ala. 189, 5 South. 500. Now in the present case the claim was merely of a pecuniary nature and was founded on a past, completed, executed consideration, and it was sufficient to declare upon the common indebitatus counts, as plaintiff did in addition to the special count under consideration. Where there is no satisfactory reason for introducing a special count, and it appears there was none in this case, and the cause of action may be proved under a common count, as was the case here, since there was nothing for appellee to do but repay the amounts promised, the common counts alone should be used.—1 Chit. Pl. (16th Ed.) bot. pp. 377, 378. Appellant restated his case in an amended special count with averments which seem to have satisfied appellee's objection, without undertaking thereby the burden of unnecessary proof, and had besides his common counts. There was therefore no harm in the ruling in any event.

Appellant found difficulty in proving that the corn from which his meal was milled had been shipped under a "milling in transit" contract, and the terms of such contract, as it was necessary for him to do in order to establish his alleged right to an abatement and return on the charges paid when the milled product was sent forward to its ultimate destination. He argues that the rulings below amounted to a denial of the validity of all such contracts. Shippers are not entitled, as matter of right, to mill grain in transit and forward the milled product under the through rate in force on the grain from the point of origin to the place of ultimate destination; on the contrary, milling in transit is a special privilege allowable at designated points, and for which extra compensation is usually exacted by carriers under the control and direction,

in the case of interstate shipments, of the Interstate Commerce Commission.—*Diamond Mills v. Boston & Maine Railroad Co.*, 9 Interst. Com. R. 311. We do not find that the trial court ruled against the validity of the contract for the "milling in transit" privilege alleged by appellant to have constituted the consideration for appellee's promise to make a return payment. As we read the bill of exceptions the court sustained appellee's objections to evidence offered by appellant with a view to proving his alleged contract, not on the ground that proof of such contract was irrelevant, immaterial, or forbidden by law, but on the ground that appellant failed to adduce a competent instrument of proof. As going a part of the way to prove a "milling in transit" privilege at Jenifer applicable to the shipments in controversy, appellant offered in evidence a printed "Tariff Schedule," purporting to emanate from appellee, and showing that "milling in transit" was allowed by appellee at Jenifer on shipments of corn from points at which appellant's shipments had originated. The court appears to have sustained an objection taking the ground that the effort was to prove that which was of record with the Interstate Commerce Commission otherwise than by a certified copy of the record. In this there was reversible error.

That the fact may have been proved so will not be disputed, for the Interstate Commerce Commission Act prescribes that every common carrier, subject to its provisions, shall print and keep open to public inspection schedules showing the rates and fares and charges for transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route; and every such carrier shall file with the Commission copies of its

schedules of rates, fares, and charges which have been established and published in compliance with the act. —3 Fed. Stat. Ann. 827. The record thus made of a tariff once legally established is conclusive, for the act provides that rates once lawfully established shall not be changed otherwise than in the mode therein prescribed—*U. S. v. Miller*, 223 U. S. 599, 32 Sup. Ct. 323, 56 L. Ed. 568. But it does not follow that a tariff may not be otherwise proved. In normal course the carrier, not the Commission, makes rates, and the act provides that: "Such schedules shall be plainly printed in large type, and copies for the use of the public shall be posted in two public and conspicuous places, in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation in such form that they shall be accessible to the public and can be conveniently inspected."

The shipments of corn, out of which this controversy arose, were interstate shipments, and this law applied to them. Appellant had served notice on appellee to produce its "Milling in Transit Schedules" in force at Jenifer. In response to this notice and a subpœna duces tecum, appellee's commercial agent produced the paper offered in evidence, testifying that it had been furnished to him by appellee's general freight agent for quotation to the public. Appellant further showed that the paper was identical with the schedules kept in appellee's office at Jenifer for the information of the public. It is safe to assume that this schedule was not the result of direct corporate action by defendant, but was prepared and put into effect by corporate agents with authority in the premises. In the circumstances shown, we are of opinion that the paper and its contents should be regarded as an admission provable for the purposes of this case. It is possible that the schedule shown

by this paper did not correspond with the copy on file with the Interstate Commerce Commission, and in that event the last-named copy would fix the true schedule as by law; but the law presumes that every man in his private and official capacities does his duty until the contrary is made to appear. We are of opinion, therefore, that the paper offered, purporting to show appellee's "milling in transit" schedule as in force at Jenifer, in the absence of reason to suspect it was erroneous, should have been received as prima facie evidence of the fact it was offered to prove, and there was reversible error in its exclusion.

Of appellee's suggestion that there is nothing in the document from which the court could ascertain the rate of charge on "milling in transit" shipments to Jenifer or find that plaintiff was entitled to recover, and hence that its exclusion, if error, was harmless, we think we may say in brief that, while it is true the paper does not show the rate of charge, it was admissible to prove the essential fact of a "milling in transit" arrangement at Jenifer. There was other compentent evidence from which the jury may have inferred that appellant's shipments were made under the "milling in transit" privilege authorized by appellee, and possibly also the amount of the charges for which appellee thereupon became legally liable, and so by inference the amount of the refunds to which he may have been entitled, though how satisfactorily this last inference may have appeared to the triers of fact we need not say.

After the foregoing opinion had been prepared, appellee filed an additional brief in which it contends that the bill of exceptions fails to show anything more than a voluntary nonsuit, and will not therefore sup-

port a review, citing *Long v. Holley,* 157 Ala. 515, 47
South. 655, and, further, that in any event the court
will not review the ruling on the demurrer to the com-
plaint, citing *Chastain v. Porter,* 130 Ala. 30 South.
492, and *Wyatt v. Evans,* 52 Ala. 285. These questions
had already received consideration by the writer,
though nothing was written of them, because counsel
had not intimated the points in their brief.

In the present case the bill of exceptions, after set-
ting forth various rulings on the admission of evidence
to which exceptions were duly reserved, including, but
not in the last place, that one to which we have writ-
ten, concluded: "The defendant objected to this testi-
mony, and the court sustained its objection, and plain-
tiff duly excepted, whereupon plaintiff took a nonsuit
with bill of exceptions"—a very different record
from that shown in *Long v. Holley.* In *Downs v.
Minchew,* 30 Ala. 86, the recital of the record was
that "the plaintiff excepted to the ruling of the
court and takes a nonsuit." The court was of
opinion that the appellant had sufficiently reserved
the question decided adversely to him to justify
them in considering it, citing *Duncan v. Hargrove,* 22
Ala. 150, and *Blackburn v. Minter,* 22 Ala. 613. *Downs
v. Minchew* was cited as authority in *Laster v. Black-
well,* 128 Ala. 143, 30 South. 663. Whatever may be
said of that case, the court has thought it proper, on
the authority of the cases mentioned, to review the
questions of evidence presented by this record, in which
it appears that plaintiff took a nonsuit in consequence
of adverse rulings and indicated at the time his pur-
pose thereby to have the questions reserved for review.

2. The majority of the court, including the members
other than DE GRAFFENRIED, J., and the writer, decline
to express themselves on the question presented by the

demurrer to the complaint, holding that the ruling can-
not be reviewed on this record; this on the authority
of *Engle v. Patterson,* 167 Ala. 117, 52 South. 397. The
writer, though he concurred in the decision of that case,
now, upon consideration of what seems to be the reason
of the matter and of the practice and ruling of the
court under the statute of 1846 (Acts 1845-46, p. 35),
substantially re-enacted in 1903 (section 3017, Code
of 1907), both authorizing a review of rulings upon
the pleadings in the case of a nonsuit—a state of the
previous law which he had not in mind at that time
—thinks that in such case all questions shown by the
record should be reviewed. It is not a matter of very
great importance, but, as I have stated my view of the
ruling on demurrer, it may serve a useful purpose to
state the reasons that led me to consider the question.
I followed the practice of this court under the statute
of 1846.—*Shields v. Byrd,* 15 Ala. 818. That seems to
me to be a reasonable practice, imposing upon parties
defendant no greater burden than such as is neces-
sarily imposed in any case by the allowance of a re-
view by nonsuit. It disposes, as far as possible, of the
whole case and obviates the necessity of a second ap-
peal for a review of the pleadings. The presumption
must be that, by the re-enactment in 1903 of the stat-
ute of 1846, the Legislature intended to re-establish
the old practice. It is certain that *Rogers v. Jones,*
51 Ala. 354, cited to *Engle v. Patterson,* and the cases
cited on appellee's brief, have no effect upon a decision
of the question for the reason that they were decided
during the interval in our statutory history, in which
no review of rulings on pleadings was allowed on a
nonsuit. The Legislature, I take it, desiring in 1903
to retain the method of review by nonsuit notwithstand-
ing its obvious disadvantage to defendants (*Blackburn*

*v. Minter,* 22 Ala. 613), for the very purpose of preventing the inconvenience and delay of a review by piecemeal, re-enacted the statute of 1846. It would seem further that the logic of the rule laid down in *Engle v. Patterson* would lead to this result, that only the exception last reserved before that nonsuit could be reviewed. However, the majority of the court think otherwise, and it results that what has been said on the subject of the complaint is without authority. That question may be raised on a subsequent appeal in the event another trial results in favor of defendant, and plaintiff shall consider another appeal advisable.

Reversed and remanded. All the Justices concur in the reversal.