[No. 2260]

## J. G. CRUMLEY, RESPONDENT v. THE SOUTHERN PACIFIC COMPANY (A CORPORATION), APPELLANT.

[177 Pac. 17]

1. CARRIERS—PASSENGERS—RATES—SCHEDULE—CHANGE.
    Change in tariff schedule takes effect upon compliance with act to regulate railroads (Stats. 1907, p. 73, sec. 4a; Rev. Laws, 4552) providing for change upon 30 days' notice to commission, notwithstanding failure to post notice whenever a change is made as required by subdivision "b"; the only effect of such failure being liability by railroad for damages resulting therefrom under section 26.

2. CARRIERS—SLEEPING-CARS—PASSENGERS—EJECTION—LIABILITY.
    Railroad was not liable for ejecting passenger from drawing-room, where passenger not sharing room with another holder of first-class passenger ticket had but one such ticket, contrary to tariff schedule, and refused to vacate room or purchase another ticket.

APPEAL from Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action by J. G. Crumley against the Southern Pacific Company. From a judgment for plaintiff and from order denying new trial, defendant appeals. **Reversed and remanded.**

*Brown & Belford,* for Appellant:

Every contract for the transportation of passengers or freight within the State of Nevada over any common carrier is governed by the terms of the railroad commission act, and the schedules filed under section 4 of that act (Rev. Laws, 4552) became a part of the contract made by the shipper or passenger. There is only one lawful rate of passage, and that is the one fixed by the schedules. No act of any railroad agent can alter the terms and conditions contained in the tariff schedules filed in accordance with the state law. American S. R. Co. v. Railroad, 207 Fed. 33; Gulf Railway v. Hefley, 158 U. S. 98; Texas Railway v. Mugg, 202 U. S. 242; Armour Packing Co. v. United States, 209 U. S. 56; L. & N. R. R. v. Mottley, 219 U. S. 467; Louisville R. R. Co. v. Maxwell, 237 U. S. 94.

The posting of schedules at various railroad stations is not necessary in order to put the rates into effect, nor is such posting a condition precedent to their effectiveness. Railway Co. v. Cisco Oil Mill, 204 U. S. 449; Railway Co. v. Alvers Comm. Co., 223 U. S. 573; United States v. Miller, 223 U. S. 599; Railroad v. Allen, 152 Ky. 145; 153 S. W. 198; Railroad v. Spring River Stone Co., 169 Mo. App. 109, 154 S. W. 465.

"No change shall be made in the rates * * * which have been filed and published, * * * except after thirty days' notice to the commission and to the public of the same published as aforesaid." "Published as aforesaid" does not mean posting a notice or posting the new schedules, but merely the distribution thereof to the agents of the railroad company for the use of the public. Virginia-Carolina P. Co. v. Atlantic Coast Line R. Co., 82 S. E. 1.

*H. R. Cooke,* for Respondent:

The single issue in the court below was: What is the correct interpretation to be put upon section 2552 of the Revised Laws? A notice posted which does not in itself contain the requisite information relative to the change of schedules is not a compliance with the statute, which provides that such posted notice must contain the specific information. The section requires the defendant, as an indispensable condition precedent, to print and file with the railroad commission a schedule containing a statement of the proposed new rate, and that copy thereof be filed with the said commission, as well as filed and kept on file in every depot, station and office of such railroad where passengers or freights are received for transportation. The answer of the defendant company does not allege that any notice was ever posted as required. "Changed as herein provided" is an extremely significant phrase. It is "herein provided" that, in order to effect a change in the rates, schedules, or classifications, "a notice shall be posted by the railroad in a conspicuous place in every depot. * * *"

By the Court, COLEMAN, J.:

Respondent, who was plaintiff in the district court, brought a suit to recover a judgment in the sum of $2,000, damages alleged to have been sustained by reason of the conduct of an employee of the defendant (appellant) in ejecting him from the drawing-room of a Pullman car which was attached to a train operated by defendant company.

Plaintiff being in Reno, and, desiring to leave for Tonopah on the night train, purchased a first-class ticket of defendant company, which entitled him to first-class passage to Tonopah, and at the same time purchased from defendant one ticket for the drawing-room in the Pullman sleeping-coach attached to the train running between Reno and Tonopah, for which he paid $7. At the time plaintiff purchased the tickets, and also when he entered the train, he was informed that under the rules of the company he could not occupy the drawing-room unless another person holding a first-class ticket occupied it with him, or unless he purchased another first-class passenger ticket. He stated that he expected a friend to occupy the drawing-room with him.

During the night, and after he had retired to his berth, no one else having appeared with a first-class ticket to occupy the drawing-room, and plaintiff having only one first-class passenger ticket, the conductor awoke the plaintiff and informed him that he would have to vacate the drawing-room or pay for another first-class ticket. After considerable discussion, and against his will, he was ejected from the drawing-room. Judgment was entered for plaintiff. This appeal is from the judgment and from an order denying a motion for a new trial.

The sole question for our determination is: In view of the fact that no other person occupied the drawing-room, and of the further fact that plaintiff had only one first-class ticket, was the defendant justified in ejecting plaintiff from the drawing-room? For a long time the

defendant had permitted a passenger holding one first-class ticket between Reno and Tonopah to occupy the drawing-room, but on a date prior to that upon which plaintiff was ejected as stated it attempted to change its tariff schedule so as to make it necessary for a person who desired to occupy such drawing-room either to purchase two first-class tickets or to procure another person holding a first-class ticket to occupy it with him. Section 4 of an act entitled "An act to regulate railroads," etc. (Stats. 1907, p. 73; Rev. Laws, 4552), assuming that a tariff schedule exists, provides that:

"(a) No change shall thereafter be made in any schedule, including schedule of joint rates, or in any classification, except upon thirty days' notice to the commission, and all such changes shall be plainly indicated upon existing schedules, or by filing new schedules in lieu thereof thirty days prior to the time the same are to take effect; *provided,* that the commission, upon application of any railroad, may prescribe a less time within which a reduction may be made. Copies of all new schedules shall be filed as hereinbefore provided in every depot, station and office of such railroad ten days prior to the time the same are to take effect, unless the commission shall prescribe a less time.

"(b) Whenever a change is made in any existing schedule, including schedule of joint rates, a notice shall be posted by the railroad in a conspicuous place in every depot, station and office, stating that changes have been made in the schedule on file, specifying the class or commodity affected and the date when the same will take effect.

"(c) It shall be unlawful for any railroads to charge, demand, collect or receive a greater or less compensation for the transportation of passengers, property, or for any service in connection therewith, than is specified in such printed schedule, including schedules of joint rates, as may at the time be in force, and the rates, fares and charges named therein shall be the lawful rates, fares

and charges until the same are changed as herein provided."

At a time prior to the date upon which plaintiff claims to have been ejected from the drawing-room, the defendant filed with the railroad commission of Nevada a tariff schedule, by the terms of which it was provided, among other things, that when a drawing-room was occupied by one adult, two first-class tickets should be required. It is admitted that every condition imposed by section (a) of said act had been complied with by defendant at a time sufficiently anterior to the date of the ejectment to make the same effective so far as that subdivision is concerned, but no notice thereof had been posted as provided by subdivision (b) of the act, and because of this failure it is contended by plaintiff that the change in the schedule had not become effective.

It is not questioned but that the defendant company had the sole power to change its tariff schedule, subject to the authority imposed in the railroad commission to supervise and regulate the same. That body accepted the schedule in question without undertaking in any way to alter the rates therein mentioned. Defendant company having the power to change its tariff schedule, and having complied with the provisions of paragraph (a) of section 4 of the act in question, quoted above, does it follow that the failure to give the notice provided for in paragraph (b) of the statute, as quoted, makes the change inoperative? In determining this question it is necessary that we ascertain the intent of the legislature as expressed in the statute.

1. Paragraph (b) of the act in question provides that "whenever a change is made" in the tariff schedule, notice shall be given that "such changes have been made," and stating "the date when the same will take effect." We do not think the giving of the notice provided for in paragraph (b) is a condition precedent to the making of the change in the tariff schedule, or to its taking effect. The very language of this paragraph,

which is separate and distinct from paragraph (a), contemplates that a change is already "made," and that the giving of the notice is an independent requirement. The language of paragraph (a) fixes the time when the change in the schedule shall become effective. It is upon "thirty days' notice" to the railroad commission. Respondent claims that, unless we hold that the giving of the notice required by paragraph (b) is held to be a condition precedent to the taking effect of the change in the tariff schedule, we nullify the requirement of paragraph (b). We think not. While it was the duty of the company to give the notice required in paragraph (b), its failure to do so did not have the effect of invalidating the changes made by compliance with paragraph (a), for such notice was intended merely to bring to the attention of the public that a change in the tariff schedule had in fact been made; and, as we view it, the only consequence which would follow a failure to give that notice would be that any person damaged by reason of such failure might recover damages therefor, as is provided in section 26 of the act.

While the opinion in the case of Texas and Pac. Ry. Co. v. Cisco Oil Mill, 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562, is not controlling, it is nevertheless persuasive. That was a case in which it was insisted that the change in the tariff schedule was not in force because of the failure of the company to post the tariff schedule in two conspicuous places, as required by the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379). The court held:

"The requirement that schedules should be 'posted in two public and conspicuous places in every depot,' etc., was not made a condition precedent to the establishment and putting in force of the tariff of rates, but was a provision based upon the existence of an established rate, and plainly had for its object the affording of special facilities to the public for ascertaining the rates actually in force. To hold that the clause had the far-reaching effect claimed would be to say that it was the

intention of Congress that the negligent posting by an employee of but one instead of two copies of the schedule, or the neglect to post either, would operate to cancel the previously established schedule, a conclusion impossible of acceptance.   While section 6 forbade an increase or reduction of rates, etc.,'which have been established and published as aforesaid,' otherwise than as provided in the section, we think the publication referred to was that which caused the rates to become operative; and this deduction is fortified by the terms of section 10 of the act making it a criminal offense for a common carrier or its agent or a shipper or his employee improperly 'to obtain transportation for property at less than the regular rates then established and in force on the line of transportation of such common carrier.'"

We think, too, the language of the court in United States v. Miller, 223 U. S. 604, 32 Sup. Ct. 325, 56 L. Ed. 568, is of striking application to the case at bar.   It was there said that—

"Publication is a step in establishing rates, while posting is a duty arising out of the fact that they have been established.   Obviously, therefore, the posting is not a condition to making a tariff legally operative."

So we say a compliance with the requirement of paragraph (a), supra, effectuates a change in the tariff schedule, while giving notice, as required by paragraph (b), is a duty arising out of the fact that a change has been made.

Other interesting cases in this connection are Louisville & N. R. Co. v. Allen, 152 Ky. 145, 153 S. W. 198; St. Louis S. W. Ry. v. Spring River S. Co., 169 Mo. App. 109, 154 S. W. 465.

2. Being clearly of the opinion that the company had done everything necessary to perfect a change in its tariff schedule, as required by law, it had a right, under the circumstances, to eject plaintiff from the drawing-room of the Pullman coach, and hence it is not liable in damages to the plaintiff.

The plaintiff's right to recover judgment for $7, the amount paid for the drawing-room in the Pullman car,

is not discussed in the briefs, nor was it alluded to in the oral argument.

We are of the opinion that the judgment and the order appealed from should be reversed, and the case remanded.

It is so ordered.

SANDERS, J., being disqualified, did not participate in the consideration of the case.