## Hines, Director General of Railroads, v. Lynch.

*Railroads — Rates — Changes of rates — Publication — Posting—Proof— Sufficiency—Interstate Commerce Commission—Public Service Commission— Certificates as evidence.*

1. It is a prerequisite of both the Interstate Commerce Act and the Public Service Company Law of June 26, 1913, P. L. 1374, that notice of proposed changes in the rates of common carriers must be published before they become effective, unless such publication is dispensed with by the commission in the manner authorized by law.

2. Publishing is the promulgating and distributing of a tariff in printed form preparatory to putting it into effect. Posting is a continuing act enjoined upon the carrier—a duty arising out of the fact that certain rates have been established.

3. Approval of a proposed change of rates is not necessarily a condition precedent to their becoming legal rates.

4. The certificates of the Interstate Commerce Commission and the Public Service Commission that certain rates have been posted with them are not sufficient evidence to establish that the rates so posted have been made effective by publication.

Motion for judgment *non obstante veredicto.* C. P. Adams Co., Jan. T., 1920, No. 80.

*C. S. Duncan* and *C. S. Butt,* for plaintiff; *William Hersh,* for defendant.

McPHERSON, P. J., May 21, 1923.—The above action was brought by the plaintiff to recover from the defendant freight charges alleged to be due by the latter on a large number of shipments of wood from various points to the United States Camp, at Gettysburg, Pa. The shipments were in part interstate shipments and in part intrastate shipments. The freight charges alleged to be due and unpaid by the defendant arose out of an application to the various shipments of rates other than the rates under which the original shipments were made and the freight due thereon calculated. The defendant paid the freight calculated to be due at the time of the shipments, and defends against the collection of the additional freight charges on the ground that the change in rates alleged by the plaintiff to be applicable to the shipments were not in law applicable, as those rates had not been published in accordance with the Acts of Congress relating to interstate commerce and the Act of the General Assembly of Pennsylvania, which govern the establishment of changes from established rates of public service companies.

The plaintiff, in presenting its case, gave testimony as to the method of arriving at the rates as originally calculated and charged and the rates alleged to be properly applicable, and, in order to establish the applicability of the rates under which it was attempting to collect the money in suit, offered in evidence a certificate of the Interstate Commerce Commission and of the Pennsylvania Public Service Commission, to the effect that the schedules of rates attached to the certificates were correct copies of the originals on file in the office of the Interstate Commerce Commission and of the Public Service Commission of Pennsylvania, and were filed on the dates set forth therein, and, having offered this evidence, rested.

The defendant moved for a compulsory non-suit, which motion was overruled and exception noted. The defendant offered no evidence, closed his case, and then moved the court to instruct the jury to render a verdict in favor of the defendant. This motion was refused and exception noted. Thereupon the court directed a verdict in favor of the plaintiff and against the defendant in the sum of $665.11, being the amount in dispute. The defendant then moved for a new trial and in arrest of judgment and for judgment *non obstante veredicto.* In support of these motions the defendant filed various reasons,

4 D. & C.

which involve the single point as to whether or not the evidence offered by the plaintiff was sufficient to establish the fact that the rates in question were legally effective, no independent proof having been offered on the part of the plaintiff that the schedule of rates offered had been published in accordance with the United States Interstate Commerce Act and the Public Service Commission Law of the Commonwealth of Pennsylvania.

The Interstate Commerce Act provides as follows:

"Section 6. Every common carrier subject to the provisions of this act shall file with the commission created by this act, and print and keep open to the public inspection, schedules showing all the rates, fares and charges for transportation between the different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe-line or by water, when a through route and joint rate have been established. . . . Such schedules shall be plainly printed in large type, and copies for the use of the public shall be posted in two public and conspicuous places in every depot, station or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected. The provisions of this section shall apply to all traffic, transportation and facilities defined in this act."

And further, in relation to changes of rates already legally established, provides as follows:

"No change shall be made in the rates, fares and charges or joint rates, fares and charges which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the commission and to the public, published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares and charges will go into effect; and the proposed changes shall be shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection: Provided, that the commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified or modify the requirements of this section in respect to publishing, posting and filing of tariffs, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

The Interstate Commerce Commission, by regulation which it had power to make under Act of Congress, provides as follows:

"Every carrier subject to the provisions of the Act to Regulate Commerce (excepting those to which special and specific modifications have heretofore been granted) shall place in the hands and custody of its agent or other representatives at every station, warehouse or office at which passengers or freight are received for transportation, and at which a station agent or a freight agent or a ticket agent is employed, all of the rate and fare schedules which contain rates and fares applying from that station or terminal, or other charges applicable at that station, including the schedules issued by that carrier or by its authorized agent and those in which it has concurred. Such agent or representative shall also be provided with all changes in, cancellations of, additions to and reissues of such publications in ample time to thus give to the public, in every case, the thirty days' notice required by the act."

In the Public Service Act of Pennsylvania, approved July 26, 1913, P. L. 1374, it is provided that: "It shall be the duty of every public service company to post and publish its tariffs and schedules showing the prices, charges, rates, fares, tolls, or the compensation asked, demanded or received for any

service rendered or furnished by said company, if a common carrier, showing the method of distribution of trains, vehicles, boats, motive power operated or owned by said common carrier, in every office or station of said public service company, open to the public, where payments shall be made by shippers, consumers, users and patrons in such manner, form and place in such office or station as to be readily accessible and so that the said tariffs and schedules may be conveniently inspected by the public, and similarly in such other places as the commission may require."

And said act also provides: "It shall be the duty of every public service company to make no change in any tariff or schedule which shall have been filed or published or posted by any public service company in compliance with the above recited provisions, except after thirty days' notice to the commission and to the public, posted and published in the manner and form and places required with respect to the original tariffs or schedules."

In the United States v. Miller, 223 U. S. 599, the Supreme Court distinguishes the publishing of a schedule of rates from the posting of a schedule of rates as provided by the Interstate Commerce Act, and held that publishing was "promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined upon the carrier," while the tariff remains operative as a means of affording special facilities to the public of ascertaining the rates in force thereunder. In other words, "publication is a step in establishing rates, while posting is a duty arising out of the fact that they have been established," and held that, in order to establish the effectiveness and applicability of the rates, it was not necessary to prove that the tariff had been posted as required. From the regulation of the Interstate Commerce Commission cited above, it would appear that the publishing of the tariff would be accomplished by the distribution thereof to the various offices of the carrier at which goods were received for shipment under any of the rates contained in the tariff. And to prove that a rate as applicable to any given shipment was an effective and established rate, it would be necessary for the carrier to prove that the tariff in which the rate was contained had been filed in the particular station from which the shipment was made.

It is contended on the part of the plaintiff that the publication of the tariff, being an act preparatory to putting the rates into effect, was something to be done prior to the filing of the rates with the Interstate Commerce Commission, and that, therefore, the certificates on the part of the commission that the tariff in question has been filed and approved by the Interstate Commerce Commission is sufficient proof that the publication of the tariff has been made in accordance with law, otherwise the commission would not have approved the rate which had been filed. In other words, that the certificates of the tariff by the Interstate Commerce Commission, as a tariff on file in its office, are conclusive that all the necessary prerequisites to the approval and establishment of the rates have been observed, and that it is unnecessary to show by independent proof that the tariff has been actually distributed to its various offices and stations and the station from which the shipments were made.

While the contention on the part of the plaintiff has to support it the following cases, King v. Oklahoma Gypsum Co., 216 S. W. Repr. 992 (the St. Louis Court of Appeals, Mo.), and the International and Great Northwestern Ry. Co. v. Carter, 180 S. W. Repr. 663 (Court of Civil Appeals of Texas), yet we are not persuaded that the ruling in said cases is correct. We are of the opinion that a more accurate construction of the Interstate Act is contained

4 D. & C.

in the case of Virginia-Carolina Peanut Co. *v.* Atlantic Coastline Ry. Co., 82 S. E. Repr. 1 (Supreme Court of North Carolina), and Schaff *v.* J. C. Famechon Co., 176 N. W. Repr. 197 (Supreme Court of Minnesota), in which it was held that, as the statute required the publication of changes of rate for a period of thirty days prior to their effective date, as well as the filing thereof with the Interstate Commerce Commission, both these acts are necessary conditions to be performed before the rate becomes a legal rate, and the changed rate supersedes the original rate legally theretofore applicable to the interstate business. The fallacy of the plaintiff's argument seems to us to lie in the fact that the approval of the change of rates by the Interstate Commerce Commission is not necessarily a condition precedent to their being a legal rate. If no question is raised as to the reasonableness of the changed rate, the mere filing and publishing in accordance with the act makes the rate an effective legal rate. No approval, therefore, being necessary nor shown to exist by the certificates of the Interstate Commerce Commission attached to the schedule of rates introduced as in this case, there is nothing on which can be based the presumption that the conditions necessarily precedent to an approval have been fulfilled, nor is the publishing an act necessarily a condition precedent to the filing with the commission. Each must be done a similar length of time before the rate is effective. What has been said in relation to the effectiveness of change of rates under the Interstate Commerce Act is as applicable to the change of intrastate rates involved in this case under a proper construction of the Public Service Act of Pennsylvania: United States Horse Shoe Co. *v.* American Express Co., 250 Pa. 527; Suburban Water Co. *v.* Oakmont Borough, 268 Pa. 243, 247.

We, therefore, conclude that the failure on the part of the plaintiff to establish by any evidence the publication of the changes of rate as required by the United States Interstate Commerce Act and the Public Service Act of Pennsylvania is a fatal defect to the successful maintenance on its part of its claim in this suit, and the verdict in favor of the plaintiff cannot be sustained.

And now, May 21, 1923, it is ordered and directed that judgment in the above entitled case be entered in favor of the defendant, notwithstanding the verdict in favor of the plaintiff, returned by the jury under the direction of the court. From John P. Sipes, McConnellsburg, Pa.