## CHICAGO, I. & L. RY. CO. v. INTERNATIONAL MILLING CO.

District Court, D. Minnesota, Fourth Division.
March 2, 1929.

Cobb, Hoke, Benson, Krause & Faegre, of Minneapolis, Minn., for plaintiff.

Harold G. Simpson, of Minneapolis, Minn., for defendant.

CANT, District Judge. The Interstate Commerce Act and the zeal of the courts in construing and applying the same is the outgrowth of a well-settled purpose to uproot certain wrongful practices which had crept into the business of transporting passengers and freight. Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 437, et seq., 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

The act in question, and the language of the courts in connection therewith, refer to the making of charges which shall be "just and reasonable," U. S. C. tit. 49, § 1, subd. 5 [49 USCA § 1(5)], and they prohibit the making or giving of "any undue or unreasonable preference or advantage," or the subjecting of any person "to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." U. S. C. tit. 49, § 3, subd. 1, 49 USCA § 3(1). They refer to and prohibit "unjust discrimination." The authorities very largely deal with cases where violations of these rules are involved, and in such cases the law and regulations in pursuance thereof are strictly construed to accomplish the manifest purpose of the act. There is much ground for urging that in cases where no such violations of the act or of its purpose are involved, the courts are not justified in abrogating or in disregarding the usual rules which govern men in their contractual relations with each other.

In the case at bar none of the wrongful purposes contemplated by the act are involved. There is no suggestion that the charges in question, and which were paid, were not just and reasonable; no one was given any preference or advantage; no one was subjected to any prejudice or disadvantage; there was no unjust discrimination. All shippers were entitled to be, and doubtless were, treated alike. This feature distinguishes the case at bar from various of the cases which have arisen under the act and which are relied upon in part by plaintiff.

During the times here in question, plaintiff was operating a line of railway between Chicago, Ill., and Louisville, Ky. Over said

line, between said points, the charge for transporting the commodity here in question, as fixed by a tariff schedule known as "Jones Tariff," was 17 cents per 100 pounds. Such tariff was in effect up to November 28, 1925. Whether it continued in effect thereafter until and including December 8, 1925, is the question for determination here. On October 22, 1925, plaintiff published and filed its individual tariff schedule which on its face took effect on November 28, 1925, and this schedule fixed the charges for transporting the commodity hereinbefore referred to at 10 cents per 100 pounds. There was no specific cancellation of the earlier rate of 17 cents. Between the dates above mentioned, defendant made the shipments here in question over the line of railway above described. It was invited by plaintiff to make them on the basis of the schedule last referred to. Plaintiff demanded and defendant paid charges on account of such shipment at the rate of 10 cents per 100 pounds.

Previous to the date of the shipments in question the Interstate Commerce Commission had issued to carriers a pamphlet known as Tariff Circular No. 18A and also certain supplements thereto. This pamphlet set forth certain rules applicable whenever rates of charges for transportation were changed, and required that in such cases the cancellation of prior rates should be clearly made, as therein set forth. Assuming such rules to be valid, a failure to comply therewith in any case subjected the carrier to substantial penalties.

Plaintiff now claims that, although it duly published and filed the tariff schedules of October 22, 1925, it failed in terms to cancel the prior rate applicable to the shipments in question; that therefore the prior rate continued in force, and that plaintiff is now entitled to recover from defendant the difference between such prior rate and the amount which defendant actually paid.

█ This statement makes it quite clear that plaintiff is seeking to recover an amount which, in good conscience, it is not entitled to receive. It is quite clear that, under the circumstances, no recovery should be allowed unless the law compels such allowance. It is like catching the defendant in a trap and using the law for that purpose. No preference, or unreasonable rate, or unjust discrimination is involved. Under such circumstances the case should fall into the class of ordinary contracts between individuals and should be covered by the usual rules applicable thereto. The parties dealt with each other on the basis of a certain schedule of rates applicable to all, and which we may assume plaintiff held out as the proper schedule in such cases, and invited dealings on the basis thereof. It demanded certain charges in payment for contemplated service. The offer was accepted and the charges paid. If such charges had been greater, the commodity might have been routed elsewhere.

█ The rule relied upon by plaintiff is that which has been announced and adhered to by the Interstate Commerce Commission, to the effect "that a rate once lawfully published continues to be the lawful rate until it has been lawfully cancelled." New Albany Box & Basket Co. v. Illinois Central Railroad Co., 16 I. C. C. 315, 316; Highland Iron & Steel Co. v. Director General, 57 I. C. C. 547, 548.

It may very well be held that where a subsequent tariff, making no mention of an earlier one, raises the rates specified in the latter, such raise shall be ineffective, because of the failure of the carrier to specifically cancel the earlier rates as the rules require. This is in the nature of a penalty imposed upon the carrier for its failure to comply with the rules applicable in such cases. But to apply the same principle to the shipper, if the rates shall be reduced by such later tariff would seem to be unfair. He has not been at fault. He has no duty in connection with the preparation, publication, or filing of the tariff. He cannot easily know whether the carrier has complied with the rules or is operating in defiance thereof. He cannot easily, if at all, compel the carrier to comply with the rules in reference to such matters. His business is solicited on the basis of a tariff schedule which is laid before him and which applies impartially to all shippers. Conceivably, the carrier may know that in failing to specifically cancel earlier tariffs, it is ignoring and violating the rules, and it may be planning to bring such an action as this in the future. Conceivably a carrier might go on for years without complying with the rules here in question, and yet might constantly hold out to patrons a tariff sheet prepared as a basis for soliciting business, and might actually do business for a long time, the patrons relying implicitly thereon. Under such circumstances, and in the absence of any abuse within the purview of the Interstate Commerce Act, such carrier should not later be heard to claim that because of his own failure to perform a duty resting upon him he has become entitled to recover an additional amount specified in some earlier tariff. In such a case, that amounts to allowing plaintiff a recovery based on his

own default. He prevails because of his own wrong. As between shipper and carrier, in a purely private controversy, where no question of public policy and no wrong affecting the public are involved, the rule should be that a plaintiff will not be heard to urge his own default as the basis upon which his recovery shall rest. Such a rule is of practically universal application, and there is no satisfactory reason why it may not be invoked here. In this feature, also, this case differs from many which may be cited.

Rulings which, by analogy, to a degree support the foregoing are found in: Magnolia Provision Co. v. Beaumont, etc. (D. C.) 20 F.(2d) 384; Beaumont, etc., v. Magnolia Provision Co. (C. C. A.) 26 F.(2d) 72; Pittsburgh Flour Mills Co. v. Great Northern Railway Co. (C. C. A.) 25 F.(2d) 66; United States v. Miller, 223 U. S. 599, 32 S. Ct. 323, 56 L. Ed. 568; Texas & Pacific Railway Co. v. Cisco Oil Mill, 204 U. S. 449, 451, 27 S. Ct. 358, 51 L. Ed. 562. The latter case specifies conditions under which "the railway company could not have been heard to assert" that certain tariff rates had not been established.

The plaintiff and its counsel doubtless believe that the law allows no choice under the facts of this case, and that a recovery should be had. In such belief this action was instituted. There are grounds upon which such claims may be based, but, in the opinion of the court, they are not satisfactory, and, all things considered, it is thought that a recovery should be denied.