## PENNSYLVANIA R. CO. v. CHARLES E. GIBSON, Inc.

### No. 3932.

District Court, E. D. South Carolina.
July 6, 1938.

858

S. Henry Edmunds, Jr., of Charleston, S. C., for plaintiff.

H. L. Erckmann, of Charleston, S. C., for defendant.

MYERS, District Judge.

On the 17th day of May, 1937, plaintiff instituted this action against the defendant asking judgment for Two hundred and sixty-one and $^{59}/_{100}$ ($261.59) Dollars.

In the original complaint plaintiff alleged that on May 16, 1934, the defendant shipped over the lines of plaintiff and its connecting carriers from Norman, in Charleston County, South Carolina, certain cabbages to Zimmerman Bros. in Baltimore, Maryland. That the cabbages arrived at Baltimore and were seized by the Government for violation of the Pure Food and Drug Act, 21 U.S.C.A. § 1 et seq., and demurrage accrued. That in accordance with the tariff rates there became due the sum of Two hundred and sixty-one and $^{59}/_{100}$ ($261.59) Dollars.

It will be seen that at the time of the above suit the three-year Statute of Limitations had almost barred any claim. The defendant claims it was barred. At best there remained only a few hours in which to bring the suit. The defendant filed answer to the complaint and alleged that the cabbages were the property of Zimmerman Bros., and were known so to be by the plaintiff. That the contract of shipment was not made with plaintiff but with Seaboard Air Line Railway Company, and that there was no privity of contract between plaintiff and defendant, nor is plaintiff the real party in interest or entitled to sue. It plead also the Statute of Limitations.

Subsequently, to wit, on March 4, 1938, plaintiff filed an amended complaint. There plaintiff sets forth that the shipment was delivered to Seaboard Air Line Railway Company at Norman, S. C., for transportation from said point via Seaboard Air Line Railway and connecting carrier and delivery to be made by plaintiff at Baltimore, Md., a copy of the bill of lading being attached to complaint. That there became due the sum of $261.59, etc., "for which sum defendant is liable to plaintiff under said contract of shipment" and under the rules, regulations and Acts of Congress, said rules and regulations to be found in tariffs lawfully published, etc.

This is the substance of the complaint as amended. In the bill of lading attached, the Seaboard Air Line Railway agrees to carry the freight to its usual place of delivery at said destination,—otherwise to

deliver to another carrier to said destination, etc. The Pennsylvania Railroad is named in said bill of lading as the "delivering carrier". This designation of route is provided for in Section 15, paragraph 8, of the Transportation Act, 49 U. S.C.A. § 15(8). It does not make the plaintiff a party to the contract.

To this amended complaint, the defendant filed a demurrer on the ground that the complaint did not state a cause of action, in that the contract was made with Seaboard Air Line Railway and not with plaintiff. That plaintiff was only a connecting carrier for said Seaboard Air Line Railway Company, and that any service rendered by plaintiff was rendered to Seaboard Air Line Railway Company; and if plaintiff has any cause of action, same is against Seaboard Air Line Railway Company and not against defendant, who made no agreement with plaintiff whatsoever.

This brings up squarely the issue, can the terminal carrier sue the shipper under the terms of the Transportation Act and the bill of lading in question in this case?

The cabbages were destroyed, and with them went the lien given the terminal carrier by the Transportation Act. Can the terminal carrier, having lost its lien and the remedy given it by law, sue the shipper under the contract of carriage made between the shipper and the initial carrier?

[1] What is the legal relationship between the parties? The theory of the Transportation Act seems to be that the terminal carrier is given a lien and that it should collect from the consignee before surrendering its lien.

In Louisville & N. R. R. v. Rice, 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071, the court says:

"The Interstate Commerce Act requires the carrier to collect and the consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment."

It is for this reason that the terminal carrier may sue the consignee. Nor can the consignee plead no privity of contract; because, when the carrier surrenders its lien and delivers goods to the consignee, it extends its personal credit to consignee and the law implies a contract on the part of the consignee to pay the terminal carrier. Union Pacific R. R. v. American Smelting & Ref. Co., 8 Cir., 202 F. 720; New York Central & H. R. R. Co. v. York & Whitney, 256 U.S. 406, 407, 41 S.Ct. 509, 65 L.Ed. 1016; Galveston, H. & S. A. R.

Co. v. Lykes, D. C., 294 F. 968; Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151, and other cases.

Nowhere have I found any authority for the proposition that, under the facts of this case, where the lien has never been voluntarily surrendered or the freight delivered, the terminal or delivering carrier may then sue the shipper, with whom it has made no contract, either express or implied. Certain cases cited by plaintiff's counsel on this point are based entirely on the implied contract arising out of the voluntary surrender of this lien by the terminal carrier.

Under the Transportation Act the contract is between the one interested in the shipment and the initial carrier. Michigan Cent. R. R. v. Mark Owen & Co., 256 U.S. 427, 430, 41 S.Ct. 554, 65 L.Ed. 1032.

In Missouri, K. & T. R. Co. v. Ward, 244 U.S. 383, 386, 37 S.Ct. 617, 61 L. Ed. 1213, the court says in substance:— The purpose of the Act is to create in the initial carrier unity of responsibility for transportation and any provision in the bill of lading inconsistent is void. The connecting carriers are mere agents, whose duty it is to forward the goods under the contract made by their principal, the initial carrier. See, also, Texas & P. R. Co. v. Leatherwood, 250 U.S. 478, at page 480, 39 S.Ct. 517, 63 L.Ed. 1096.

Plaintiff's counsel urges that these cases do not apply,—that they refer only to the right to sue the carrier for damages. I do not so construe them. They fix principles. These principles are applicable to the case at bar.

The case of Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, at page 208, 31 S.Ct. 164, 55 L.Ed. 167, 31 L.R.A., N.S., 7, suggests that the fixing of the liability of the carrier was not all that might well induce the regulating power of Congress. etc., and refers to the question of joint rates and singleness of charge and continuity of transportation.

The legal status of the parties to this cause being principal and an agent of the initial carrier, what right has the agent of the initial carrier to sue the shipper with whom it made no contract?

It cannot sue for services performed, because it performed services for the initial carrier alone.

■ It cannot sue for the part of the transportation earned by it, because not only is the initial carrier responsible for this under the contract, but the contract of transportation is a whole contract covering all charges including storage and demurrage and cannot be split up into component parts.

Pennsylvania R. R. v. Carolina Portland Cement Co., 4th Cir., 16 F.2d 760.

It is a "single charge". Atlantic Coast Line Ry. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167, 31 L.R.A., N.S., 7.

■ The terminal carrier is a mere agent of the initial carrier,—a subordinate, not a substitute: National Bank of Republic v. Old Town Bank, 7 Cir., 112 F. 726.

■ The rule governing bills of lading is the same as that of ordinary contracts. Chicago, I. & L. Ry. Co. v. International Milling Co., D. C., 33 F.2d 636.

Plaintiff has cited cases where the terminal carrier was allowed to sue where it had paid the other carriers their share of the freight and was therefore the assignee of the rights of the initial carrier. It is suggested that this is the custom and that the courts will take judicial cognizance of same.

In the case of Atlantic Coast Line Ry. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167, 31 L.R.A.,N.S., 7, cited by plaintiff, the court upholds the requirement on the part of the initial carrier to obligate itself to carry freight beyond its destination. The court says (page 169):

"The methods in vogue, as the court may judicially know, embrace not only the voluntary arrangement of through routes and rates, but the collection of the single charge made by the carrier at one or the other end of the route."

This is far from being authority that the terminal carrier may sue the shipper. Certainly it is not authority that the initial carrier may sue the consignee. At one end or the other means that the terminal carrier at his end may sue the consignee on his implied contract and the initial carrier may sue the consignor at his end on the direct contract.

■ This court knows of no custom whereby the terminal carrier is deemed to have paid the entire freight and is entitled to the entire claim as assignee; nor is such custom pleaded by plaintiff as a part of its cause of action. In South Carolina, when the plaintiff brings an action on a claim founded on a general or local custom, it must be pleaded. A. M. Law & Co. v. Cleveland, 172 S.C. 200, 203, 173 S.E. 638. Nor does plaintiff, in this case, allege facts sufficient to constitute itself the assignee of the claim of the initial carrier. On the contrary, it alleges that defendant is liable to it under the contract of shipment and the Acts of Congress and the rules and regulations of the tariff.

■ I think the demurrer should be sustained. Ordinarily, I should give plaintiff the opportunity to amend its complaint, if it could properly do so, so as to allege an assignment to it if the facts warranted it, of the rights of the initial carrier and sue as assignee of same. However, I feel bound by the ruling of the Supreme Court of South Carolina in the recent case of Coral Gables v. Palmetto Brick Co., 183 S.C. 478, 191 S.E. 337. There the court says at page 487, 191 S.E. at page 340:

"A statute providing for the amendment of pleadings does not permit a court, under color of ordering an amendment, to abrogate the statute of limitations. Hence the rule is that an amendment which introduces a new, or different cause of action and makes a new or different demand does not relate back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies, although the causes of action set forth in the original pleading and in the amendment arise out of the same transaction, and, by the practice of the state, a plaintiff is only required to state the facts which constitute his cause of action, and although the original pleading demanded an amount large enough to cover both causes of action. Limitations of Actions, 37 C.J. 1074, § 551b.

"The same principle is announced by our court in Ouzts v. State Highway Department, 161 S.C. 21, 159 S.E. 457, 461, where it is said: '* * * in order to state a cause of action under the statute, it is essential to allege that the plaintiff has filed his claim with the department as required by the act. In the present case, no such allegation was made in the complaint, and the plaintiff, after lapse of the time limited by the statute for bringing the action, sought by amendment to supply it,

which was allowed by the trial judge. This was error. The time for bringing suit having lapsed, the court was without power to allow an amendment giving a cause of action where none was alleged and where none could then exist. See Lilly v. Railroad Company, 32 S.C. 142, 10 S.E. 932.' "

The Statute of Limitations has already run against any claim founded on the rights of the initial carrier. The plaintiff in this case saw fit to wait until almost the last day to bring this action on the contract. It cannot complain if the law prevents it from changing its cause of action, which it might have done had it sought to enforce its rights with diligence.

It is therefore ordered that the demurrer be sustained and the complaint dismissed with costs.