**CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY,** Union Pacific Railroad Company, Southern Pacific Company, Great Northern Railway Company, and Northern Pacific Railway Company, Appellants,

v.

**ALOUETTE PEAT PRODUCTS, Limited, et al., Appellees.**

**INTERSTATE COMMERCE COMMIS- SION, Appellant,**

v.

**ALOUETTE PEAT PRODUCTS, Limited, et al., Appellees.**

Nos. 15276, 15277.

United States Court of Appeals Ninth Circuit.

Dec. 26, 1957.

Rehearing Denied April 11, 1958.

Harold G. Boggs, Robert F. Garing, B. E. Lutterman, R. Paul Tjossem, Seattle, Wash., Robert W. Ginnane, General Counsel, C. H. Johns, Jr., Asst. General Counsel, I.C.C., Washington, D. C., for appellants.

Wright, Booth & Beresford, Robert O. Beresford, JoAnn R. Locke, Seattle, Wash., for appellee.

Before HEALY and FEE, Circuit Judges, and MURRAY, District Judge.

W. D. MURRAY, District Judge.

This is an appeal from a judgment of the District Court reversing orders of the Interstate Commerce Commission dismissing complaints before the Commission seeking recovery of alleged overcharges in freight charges for the transportation of peat from British Columbia points to destinations in the

United States. The District Court held in effect that the rates in question were unlawful because not established as directed by the statute (49 U.S.C.A. Sec. 6, Par. 3), and resulted in overcharges to the shippers, which they were entitled to recover. The judgment ordered the Interstate Commerce Commission to require the railroads to refund to the shippers the difference between the charges paid under the unlawful rates and those which should have been charged under the last lawfully established rates.

On December 5, 1946, in proceedings denominated as Ex Parte 162, Increased Railway Rates, Fares, and Charges, 1946, 266 I.C.C. 537, the Interstate Commerce Commission made an order allowing the nation's carriers certain increases in freight rates. Insofar as material here, Ex Parte 162 provided in Appendix 1 (266 I.C.C. 618):

"Basic freight rates, whether class or commodity, and charges, on the commodities hereinafter specified, may be increased in the amounts and in the manner set forth as to each commodity class or group. The commodity group numbers (or commodity class numbers) used in this appendix, and throughout the entire report and order, for convenience, are those specified in the order of division 4 of November 22, 1927, In the Matter of Freight Commodity Statistics, which was in effect at the date of the submission herein, although a new list of commodity classes with articles assigned thereto has been promulgated by order of division 1, September 24 and October 16, 1946, to become effective January 1, 1947. They are intended generally to cover the items customarily included by carriers in their reports to the Commission under each numbered description, as of the date for the submission."

In the same appendix, Ex Parte 162 set forth the following allowed increase in freight rates (266 I.C.C. 623):

"Fertilizers, N.O.S., Including Potash—Group 640 Diatomaceous or Infusorial Earth—Group 701.

"Twenty percent, subject to a maximum of 6 cents per 100 pounds, or $1.20 per net ton."

Commodity Group No. 640 of the Freight Commodity Statistics referred to by the Commission, included peat, ground or unground, as a fertilizer, and accordingly the authorized increase in the rate for the shipment of peat under Ex Parte 162 was 20 percent, subject however, to a maximum of 6 cents per 100 pounds, or $1.20 per net ton.

Ex Parte 162 further provided (266 I.C.C. 617):

"The authorized increased rates and charges may be made effective in the period January 1, 1947, to February 28, 1947, upon not less than 5 days' notice to the Commission and to the general public, by filing and posting in the manner prescribed in the Interstate Commerce Act."

Appellees are engaged in the production of peat at various points in British Columbia, Canada.

The appellant carriers, subsequent to Ex Parte 162, filed with the I.C.C. a special commodity rate on peat shipped from points in British Columbia to destinations in the United States, effective January 1, 1947, which included the full 20 percent increase, and this 20 percent increase was put into effect on 5 days' notice to the public. The 20 percent increase in freight rates on peat moving from British Columbia to destinations in the United States was unauthorized by Ex Parte 162, because it exceeded the 6 cents per hundred pounds maximum increase therein provided for; and it was only authorized increases which were permitted by Ex Parte 162 to be made effective on 5 days' notice.

Upon representations that rates on peat from origins in eastern Canada to points in the United States east of the Mississippi River were on the fertilizer basis and were increased a maximum of

6 cents, the carrier appellants reduced the transcontinental rates on peat between and on December 1, 1947, and March, 29, 1948, to reflect a maximum increase of 6 cents. However, the carriers refused to reduce the rates on peat from origins in British Columbia to points in Northern California to a maximum increase of 6 cents, and republished rates reflecting the full 20 percent increase.

Two complaints were filed by appellees [1] before the Interstate Commerce Commission alleging that the rates charged on numerous shipments of peat which moved on and between January 1, 1947, and March 29, 1948, from points in British Columbia to points in the United States were inapplicable, unjust and unreasonable and unduly preferential and prejudicial. The complaints also alleged that the rates from origins in British Columbia to points in Northern California (which had not been reduced to the 6 cents maximum increase) are and for the future will be unjust and unreasonable and unduly preferential. The Commission was asked to award reparations and to prescribe lawful rates for the future to the Northern California points.

After extended proceedings and on April 7, 1950, the Commission entered a report and order awarding reparations to appellees and ordering the unauthorized increases removed. In this report and order of the Commission the reparations were awarded because, in the words of the Commission, "Increased rates on ground peat * * * have resulted in charges for hauls within the United States that were unjust and unreasonable", and reparations were ordered to the extent that the rates were found to be unjust and unreasonable.

Thereafter the carriers filed a petition for reconsideration by the entire Commission which was denied by order dated January 7, 1952.

The parties then submitted their Rule 100 [2] statement, showing the amount due under the Commission's findings and under date of December 30, 1953, the Commission issued its order setting forth the amount due appellees and directing the carriers to pay the same by February 19, 1954. The carriers elected not to pay the amounts found due and to await the shippers' court action based on the Commission's order.

This order of the Commission of December 30, 1953, ordinarily would have terminated the administrative proceedings. However, at about the same time, the Commission, in the case of F. W. Bolgiano & Co., Inc. v. Baltimore & O. R. Co., 291 I.C.C. 659, which contained facts and arguments substantially similar to those involved in the peat rate case, and which had granted reparations upon the same grounds as they had been granted in the peat case, reversed itself and dismissed the complaint in that case. As a result of such action of the Commission the carriers here involved, on March 8, 1954, filed a petition for leave to file a further petition for reconsideration on the strength of the Commission's action in the Bolgiano case. This petition was granted over appellees' objection and by order of June 21, 1954, the Commission reopened this proceeding for reconsideration upon the record already made. On October 4, 1954, the Commission issued its report and order on reconsideration, in which it reversed its

---

1. No. 29974 was filed by Acme Peat Products et al. v. The Akron, Canton & Youngstown R. Co. et al., and No. 30260 was filed by Alouette Peat Products, Ltd., v. The Atchison, Topeka & Santa Fe R. Co. et al., Defendants. Both contained the same allegations and both were submitted to the Commission on the record as made in No. 29974.

2. "Rule 100. Statements of claimed damages based on Commission findings. When the Commission finds that damages are due, but that the amount cannot be ascertained upon the record before it, the complainant should immediately prepare a statement showing details of the shipments on which damages are claimed, in accordance with the form No. 5 * * *."

prior order for the payment of reparations, and ordered a dismissal of the complaints based on its decision in Bolgiano & Co., Inc. v. Baltimore & O. R. Co., supra. Appellees then filed a petition for reconsideration which was denied by order of January 3, 1955, and these actions were filed in the District Court. The two actions involve common questions of law and fact and were consolidated in the District Court.

A certified copy of the administrative record was filed with the Court, hearing was had and briefs were filed and the cause argued and the Court held:

1. That the Commission's order of June 21, 1954, reopening the proceeding for reconsideration, despite Commissioner's Rule 101(f),[3] amounted to a denial of due process to appellees;

2. That the assailed rates published and filed on less than 30 days' notice without express Commission approval were illegal and void;

3. That those rates damaged appellees by causing a loss of market.

The Court remanded the matter to the Commission for the purpose of entering a reparation order awarding appellees reparation to the extent of the difference between the rates paid and the basic rate previously existing before either the 6 cents or 20 percent increase. Both the carriers and the Commission appealed from the Court's decision.

Appellants contend that the District Court erred in holding that the Commission's order of June 21, 1954, granting a second petition to reopen and reconsider the proceedings constituted a denial of procedural due process to appellees. An examination of this point indicates a serious problem in administrative law is involved, but in our view of this case a decision on the question of due process is unnecessary to dispose of the case and we express no opinion on that point.

Appellants likewise contend that the trial Court erred in holding that the assailed rates published and filed on less than the statutory 30 days' notice, without express Commission approval, were illegal and void, and in remanding the case to the Commission with directions to award to appellees the difference between the rates actually collected and those due under the last legally published tariff. With this holding of the District Court we agree.

Section 6, Paragraph 3 of the Interstate Commerce Act (49 U.S.C.A.) provides:

"Change in rates, fares, etc.; notice required; simplification of schedules. No change shall be made in the rates, fares, and charges * * * which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the commission and to the public published as aforesaid * * *: Provided, that the commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified * * *."

 From the record herein, it is clear that the assailed rates providing for the 20 percent increase were made effective upon five days' notice rather than the statutory 30 days' notice, and that such shortened notice was without Commission authorization. The Commission so found in its report and order of October 30, 1954. Findings of fact by the Commission, supported by substantial evidence, are final and binding upon the courts. I. C. C. v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Hudson & Manhattan R. Co. v. U. S., 313 U.S. 98, 61 S.Ct. 884, 85 L.Ed. 1212; I. C. C. v. Union Pac. R. Co., 222 U.S. 541, 550, 32 S.Ct. 108, 56 L.Ed. 308. The Commission, however, after finding specifically that the rates were

3. "Rule 101(f) Successive petitions on same grounds, not entertained. A successive petition under this section submitted by the same party or parties, and upon substantially the same grounds as a former petition, which has been considered and denied by the entire Commission will not be entertained.

not published as required by the Act, and that no authorization for less than statutory publication had been granted, went on and concluded that:

"Upon reconsideration we find that the assailed rates were applicable and are not shown to have been unjust, unreasonable or otherwise unlawful."

■ It is to be noted that the trial court's reversal of the Commission results not from any disagreement with the Commission's findings of fact that the assailed rates were not shown to be unjust or unreasonable [4], but rather from the trial court's findings that the Commission's conclusion of law that the rates were not otherwise unlawful was erroneous. The conclusion of law by the Commission, which the District Court reversed, was reached by the Commission not in its quasi legislative or rate making capacity wherein it is presumed to be the expert, but in its quasi judicial capacity wherein its adjudications must be governed by applicable statutory provisions. Conclusions of law by the Commission, while entitled to respectful consideration by the Courts, do not have the same finality as its findings of fact. Levinson v. Spector Motor Co., 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158.

[5] The Commission's conclusion that the increased rates were not unlawful despite its finding of fact that they were made on less than 30 days' notice in violation of the statute finds precedent in other Interstate Commerce Commission proceedings. W. P. Brown & Sons Lumber Co., et al. v. Louisville & Nashville R. Co., 37 I.C.C. 507; Greene Cananea Copper Co. v. Chicago, Rock Island & Pac. R. Co., 88 I.C.C. 225. But as the Supreme Court stated in Louis-

ville & N. R. Co. v. U. S., 282 U.S. 740, at page 759, 51 S.Ct. 297, at page 304, 75 L.Ed. 672:

"Long-continued practice and the approval of administrative authorities may be persuasive in the interpretation of doubtful provisions of a statute, but cannot alter provisions that are clear and explicit when related to the facts disclosed. A failure to enforce the law does not change it."

■ Looking again at Paragraph 3 of Section 6 of the Act, we find the clearly expressed requirement that "no change shall be made in the rates * * except after thirty days' notice to the commission and to the public published as aforesaid * * * ", unless the Commission allows changes upon less than the notice specified. The Commission found as a fact that this mandatory provision of the statute concerning publication was not complied with, and "when the facts have been resolved by the Commission upon evidence, there is no escape from the application of the broad provision of the statute". Louisville & N. R. Co. v. U. S., supra, 282 U.S. at page 758, 51 S.Ct. at page 304. No case has been cited by appellants, nor has the Court found one, holding that the Commission has authority to repeal that section of the Act of Congress requiring publication in order to establish rate changes, which the Commission in effect has attempted to do by holding that the increased rate was not "otherwise unlawful", despite its finding that that section of the statute had been violated. The Commission erred, after having found the facts, in failing to "apply the broad provisions of the statute".

Appellants urge that this holding of the Court will destroy one of the prin-

---

4. The Commission having in Ex Parte 162 determined that the maximum increase that should be allowed in peat freight rates was 6 cents per hundred pounds or $1.20 per ton, a serious question exists as to the Commission's authority to find in its October 30, 1954, order that the rates were not shown to be unjust or unreasonable in the light of the decision of the Supreme Court in Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348, despite the Commission's attempt in Ex Parte 162 (266 I.C.C. 537 at 617) to remove that order from the doctrine of the Arizona Grocery case. However, the District Court did not consider that question, nor do we.

cipal aims of the Interstate Commerce Act, i. e. that there shall be one rate on file which must be paid by the shipper and collected by the carrier. Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853. On the contrary, it seems that the decision of the trial court permits the achievement of that very aim. The trial court did not suggest that the increased rate, put into effect in violation of the statute as aforesaid, and on file with the Commission, was not the rate that had to be collected by the carrier and paid by the shipper. In other words, it did not disturb that part of the Commission's finding that the increased rates were the *applicable* rates to be applied to the shipments in question. It ruled, however, that while they were the applicable rates [5], they were not legal or lawful rates, not having been legally established.[6]

Under the Act the shippers have always been required to pay, and carriers collect, the rate specified in the tariff on file with the Commission. Davis v. Portland Seed Co., 264 U.S. 403, 425, 44 S.Ct. 380, 68 L.Ed. 762. However, if this filed rate was proved to be unreasonable upon complaint to the Commission, the shipper was entitled to recover the difference between what he had paid and what the Commission found to be the reasonable rate. Pennsylvania

R. Co. v. International Coal Min. Co., 230 U.S. 184, 197, 33 S.Ct. 893, 57 L.Ed. 1446. So in the situation which exists in this case. The shippers were bound to pay the rates specified in the tariff on file with the Commission, but upon proof that the rates were not lawfully established, they became entitled to recover the difference between what they had paid and the lawfully established rate. There is no reason under the Act why a shipper should not be protected in the situation here existing where the rates are unlawful because not lawfully established, just as he is protected in the situation where the rates are unlawful because unreasonable. In either case, the protection is against unlawful rates. Thus under the Act, a rate, to have final lawfulness and validity, must be lawfully established (Sec. 6, Par. 7, 49 U. S.C.A.), must be just and reasonable (Sec. 1(5), 49 U.S.C.A.) and nondiscriminatory and nonprejudicial (Sec. 3, Par. 1, 49 U.S.C.A.). Lacking any of these essentials, it cannot be the valid, lawful rate even though it becomes the applicable rate [7] by virtue of being on file with the Commission.

While the acceptance for filing by the Commission of the rate makes that rate applicable, it in no way cures any defect which may be present either in the establishment or the reasonable-

---

5. While many cases contain statements that published rates or filed rates become the "lawful rates", or "legal rates", or "binding rates", it is apparent that the terms "lawful", "legal", or "binding" in those cases are intended to mean merely the rates which must be paid at the time of shipment, or rates lawful as to the shipment at the time it is made. Thus, for example, in Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, at page 97, 35 S.Ct. 494, at page 495, the Supreme Court said: "Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge." However, in the second sentence following that, the Court recognized that the rate may be only temporarily lawful, or lawful at the time—in short the applicable rate—when it said: "Shippers and travelers are charged with notice of it, and they as well as the carrier must abide

by it, unless it is found by the Commission to be unreasonable." A more precise statement of the rule was made in Davis v. Portland Seed Co., 264 U.S. 403, 425, 44 S.Ct. 380, 385, where the Supreme Court said: "The statute requires rigid observance of the tariff, without regard to the inherent lawfulness of the rates specified",—leaving the inference that if it is inherently unlawful for any reason, it will be corrected upon application to the Commission.

6. As already pointed out, the vice in the increased rates lies in the failure to publish, as required by the statute. Under the statute, publication is a step in the establishment of rates. U. S. v. Miller, 223 U.S. 599, at page 604, 32 S.Ct. 323, 56 L.Ed. 568.

7. See footnote 5.

ness of the rate. Speaking of the effect of filing with the Commission, the Supreme Court in Boston & Maine Railroad v. Piper, 246 U.S. 439, at page 445, 38 S.Ct. 354, at page 355, 62 L.Ed. 820, said:

> "While this provision was in the bill of lading, the form of which was filed, with the Railroad Company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body (Citing case); but not so of conditions and limitations which are, as is this one, illegal, and consequently void."

What the Court there said with reference to bills of lading filed with the Commission is equally true with respect to rate schedules so filed. A rate which is in fact unreasonable is not made reasonable by the mere act of filing, nor does the mere act of filing make lawful a publication not made in accordance with the provisions of the Act. Filing does not constitute publication, or cure a defective publication.

 As to the District Court's direction to the Commission to award to appellees all sums paid in excess of the basic rate, without the 6 cents per hundred increase authorized in Ex Parte 162, it need only be pointed out that the 6 cents per hundred increase authorized in Ex Parte 162 had not been, at the time the shipments in question were made, established as the legal rate in the manner provided by law. The Court is without authority to establish rates. United States v. Kansas City Southern Railway Co., 8 Cir., 217 F.2d 763. A rate once fixed remains established until changed in some manner allowed by law. Union Pacific R. Co. v. U. S., 48 Ct.Cl. 99; McCaffrey Brothers Co. v. Chicago, B. & Q. R. Co., 114 Neb. 382, 207 N.W. 503. No change having been legally made in the rate which existed before Ex Parte 162, that rate was the only existing, legally established rate and the

Court was bound to apply it. U. S. v. Kansas City Southern Ry. Co., D.C., 116 F.Supp. 484, 487, reversed on other grounds 217 F.2d 763.

 Finally, on this point there remains the contention by appellants that since the Commission found no damage resulted to appellees from the increased rates, under the authority of Pennsylvania R. Co. v. International Coal Mining Co., supra, the Commission was without power to award appellees any damages. In this connection it may be noted that the trial court purported to find damage to appellees other than the overcharges as a result of the increased rates. However, in this the trial court was in error, because as previously pointed out herein, the findings by the Commission of no damage, based on substantial evidence, are binding upon the courts, and it cannot be said from the record here that the finding of no damage by the Commission is not supported by the evidence.

Be that as it may, however, it is apparent that both the Commission and the railroad appellants erroneously regard appellees' claim herein as one for damages rather than one for overcharge. That there is a distinct difference under the Act between a claim for damages and a claim for overcharge is made manifest by the provisions of Section 16, Paragraph 3 of the Act, which provides in one paragraph a statute of limitations for the recovery of damages, and in a separate paragraph a statute of limitations for the recovery of overcharges. Furthermore, Section 16, Paragraph 3, subparagraph (g) of the Act defines overcharges as follows:

> "The term 'overcharges' as used in this section shall be deemed to mean charges for transportation services in excess of those applicable thereto under the tariffs *lawfully* on file with the commission."

There can be no doubt from what has been previously said that this action by the appellees is to recover charges for transportation services in excess of those due under the tariffs lawfully on file with

the Commission. The case of Southern Pacific Co. v. Darnell-Taenzer Co., 245 U.S. 531, at page 534, 38 S.Ct. 186, 62 L.Ed. 451, distinguishes cases like Pennsylvania R. Co. v. International Coal Mining Co., supra, from a case such as this. There the Court said:

"The cases like Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, where a party that has paid only the reasonable rate sues upon a discrimination because some other has paid less, are not like the present. There the damage depends upon remoter considerations. But here the plaintiffs have paid cash out of pocket that should not have been required of them, and there is no question as to the amount of the proximate loss. See Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 429, 35 S.Ct. 328, 59 L.Ed. 644; Mills v. Lehigh Valley R. Co., 238 U.S. 473, 35 S.Ct. 888, 59 L.Ed. 1414."

If the theory of the Commission in this case were to be upheld, a strange situation indeed would exist. Here in Ex Parte 162, the Commission found as a matter of fact that the carriers were entitled to a maximum of 6 cents per hundred pounds increase in peat freight rates. Thereafter, for the period between January 1, 1947, and March 29, 1948, the carriers exacted a greater increase than the Commission had found they were entitled to, and the railroads themselves apparently recognized this fact when they voluntarily reduced their rates to reflect the maximum increase of 6 cents. Thereafter, upon further proceedings before the Commission, the Commission reaffirmed its finding that the 6 cents increase was the maximum that should be allowed. Thus under the findings of the Commission, made at two different times, it is established that the 6 cents maximum increase in peat freight rates is all the carriers are entitled to charge; and it is equally established that during the period from January 1, 1947, to March 29, 1948, thousands of dollars were collected from shippers in excess of what would have been collected under the rate the Commission twice determined should be allowed. In short, the shippers here, as in Southern Pacific v. Darnell-Taenzer Co., supra, "have paid cash out of pocket that should not have been required of them", and it would be unthinkable if, as the Commission held, they could not recover it.

The only remaining specification of error is that of the carrier appellants that the trial court erred in finding and concluding that the railroads failed to comply with the Commission's order in Ex Parte 162, when they published the rates here considered. The short answer to this specification of error is that it was not the trial court who found that the railroads failed to comply with the order in Ex Parte 162, but it was the Commission, and the Commission's finding in that respect is final and conclusive.

Affirmed.