667 F.2d 971
 SOUTHERN MOTOR CARRIERS RATE CONFERENCE, INC., et al., Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
BURLINGTON NORTHERN INC., et al., Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
 Nos. 79-3856, 80-7170.
 United States Court of Appeals, Eleventh Circuit.
 Feb. 12, 1982.
 Amended Opinion May 28, 1982.
See 676 F.2d 1374.
 
 Rea, Cross & Auchincloss, Patrick McEligot, Washington, D. C., for petitioners Southern Motor Carriers Rate Conference, Inc., et al.
 Harry McCall, Jr., New Orleans, La., for Aberdeen and Rockfish R. Co., et al.
 Robert S. Rooth, New Orleans, La., Albert B. Russ, Jr., Jacksonville, Fla., Wm. H. Bassett, pro se., for Stupp Corp.
 Robert B. Nicholson, Dept. of Justice, Evelyn G. Kitay, I.C.C., Washington, D. C., Wayne M. Senville, I.C.C., Philadelphia, Pa., for respondents.
 James E. Sykes, Chicago, Ill., for petitioners Burlington Northern, Inc., et al.
 Before GODBOLD, Chief Judge, and TJOFLAT and VANCE, Circuit Judges.
 GODBOLD, Chief Judge:
 
 
 1
 Petitioners and intervenors in this consolidated appeal seek review of several orders by the Interstate Commerce Commission establishing a new procedure for detecting and remedying errors in the publishing of tariffs.
 
 
 2
 Common carriers are required to publish and file their transportation rates with the Commission, and they must adhere to these rates. When a carrier wishes to change its rates or establish rates for a new service it must file its proposed schedule of rates, or a tariff, with the Commission 30 days before the tariff's effective date, 20 days for a rail carrier. 49 U.S.C.A. Sec. 10762 (Supp.1981). The Commission requires rate changes to be flagged by an appropriate symbol to denote an increase, decrease or no net change in accordance with 49 U.S.C. Sec. 10762(b)(1)(E).[1]
 
 
 3
 Prior to this controversy the Commission inspected proposed tariffs during the 30/20 day waiting period for defects in form or manner of publishing, such as improper symbolization or typographical errors. If a tariff contained such errors the Commission could reject the proposed tariff and require the carrier to resubmit the corrected tariff.[2] If the Commission did not reject the tariff within the 30/20 day notice period it became effective and was then considered the applicable rate. Thereafter the tariff could be attacked for any errors by the Commission or a shipper but only through a formal complaint procedure. 49 U.S.C. Sec. 11701; 49 C.F.R. Sec. 1100.24 et seq.[3]
 
 
 4
 In 1979 the Commission published a notice of proposed rulemaking entitled Ex Parte No. 367, Tariff Integrity Board. 49 Fed.Reg. 39558. The notice stated that the Commission planned to abandon its examination of all submitted tariffs because of budgetary restraints and an increased number of filings. Instead it would perform a random sampling. Since many more defective tariffs would become effective under the random sampling method, the Commission proposed the following procedure which it adopted by its order of October 5, 1979 after receiving public comment: Within 60 days after a tariff becomes effective a party may bring an informal complaint that the tariff has been unlawfully established[4] before a newly created employee board, the Tariff Integrity Board. 49 C.F.R. Sec. 1011.6(i). The carrier has 10 days to respond, and the complainant has 10 days to reply. 49 C.F.R. Sec. 1100.22a(d). The proceedings are informal, which means no transcript is made, no subpoenas are issued and no oaths are administered.[5]
 
 
 5
 If the Board finds that a tariff was unlawfully established it may strike the tariff from the Commission's files. 49 C.F.R. Sec. 1100.22a(e)(3).[6] The striking of a tariff has a retroactive effect, that is, the tariff was never effective and the carrier had no legal right to charge the rates contained in it. Assuming the defective tariff had changed previous rates, the carrier must refund any charges in excess of the previous rate or collect any undercharges.
 
 
 6
 The Board does not have the authority to hear complaints alleging substantive violations, such as unreasonableness of rates, undue preference or discrimination; rather, it may strike tariffs only on those grounds that would have caused the Commission to reject tariffs before they became effective. 49 C.F.R. Sec. 1100.6(i). In addition, if there is a disputed issue of material fact the Board must refer the complaint to the Commission for handling under the formal complaint procedure. 49 C.F.R. Sec. 1100a(e)(5). The Board's decision is automatically stayed upon the filing of an administrative appeal.[7] The Commission later announced that it had discontinued the random sampling procedure in favor of examining only the title page of each tariff submitted.
 
 
 7
 Petitioners raise several claims,[8] only one of which we need address: whether the Commission has the statutory authority to reject or strike an effective tariff because of publication errors without formal hearing procedures. We hold that it does not.
 
 
 8
 49 U.S.C. Sec. 10762(e) authorizes the Commission to reject a tariff submitted to it for failure to comply with the publishing requirements of Sec. 10762 or the regulations carrying out that section. In giving the Tariff Integrity Board the power to strike an improperly established tariff the Commission drew upon its authority to reject.[9] The Commission reasoned that if a tariff does not meet all publication requirements it cannot legally amend the old rate on file, regardless of when the error is discovered.
 
 
 9
 The Commission's interpretation of its authority under the Interstate Commerce Act is entitled to deference if its construction is reasonable and consistent with its past decisions. Bayside Enterprises, Inc. v. NLRB, 429 U.S. 298, 303, 97 S.Ct. 576, 580, 50 L.Ed.2d 494 (1977). However, this court cannot abdicate its ultimate responsibility to construe the statute. Zuber v. Allen, 396 U.S. 168, 192-93, 90 S.Ct. 314, 327-28, 24 L.Ed.2d 345 (1969).
 
 
 10
 The plain meaning of reject is 'to refuse to receive' or 'to decline to accept.' Webster's New Collegiate Dictionary. Section 10762(e) is worded accordingly: 'The Commission may reject a tariff submitted to it . . .' (emphasis added).[10] The purpose of Sec. 10762 is to give to the public notice of proposed changes and opportunity to protest. In keeping with this purpose it is appropriate for the Commission to reject a proposed rate and require a refiling if an error obscures pertinent information, as when the carrier omits to flag a rate increase with the correct symbol.
 
 
 11
 Other courts have interpreted the purpose of tariff rejection similarly. See Delta Air Lines, Inc. v. CAB, 543 F.2d 247, 264 (D.C.Cir.1976) (Federal Aviation Act), quoting Municipal Light Bds. v. FPC, 146 U.S.App.D.C. 294, 450 F.2d 1341, 1346 (1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972) (Federal Power Act) ('[rejection is a] peremptory form of response to filed tariffs which classically is used not to dispose of a matter on the merits but rather as a technique for calling on the filing party to put its papers in proper form and order.') In Delta Air Lines the court held that the Civil Aeronautics Board cannot reserve its power of rejection once it permits a tariff to become effective. It must follow the procedures for challenging effective tariffs set forth in the Federal Aviation Act.[11] The court concluded, 'We find implicit in Judge Leventhal's [author of Municipal Light Bds. v. FPC, supra] description [of rejection] a recognition that rejection is a regulatory device properly used only prior to the effective date.' 543 F.2d at 268 (emphasis in the original). See also CAB v. Delta Air Lines, Inc., 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961) (Board cannot alter an effective certificate of public convenience without providing formal notice and hearing).
 
 
 12
 That Sec. 10762 does not specify rejection of effective tariffs and accords the carrier no procedural rights indicates that Congress intended the consequences of rejection to be minimal, namely refiling. By contrast Congress set out in detail elsewhere in the Act the Commission's power to rectify an effective tariff's substantive violations and the appropriate procedures. Section 10704 gives the Commission power to prescribe reasonable rates after an investigation and full hearing of either proposed or effective rates. When the Commission investigates the reasonableness of proposed rates it may either suspend or let a tariff become effective. Secs. 10707 and 10708. If a tariff under investigation becomes effective the Commission may order the carrier to keep account of all payments collected under the new rates pending a final determination to facilitate refunds or collections of undercharges if necessary. Id. Even the general enforcement authority provision, Sec. 11701, permits the Commission to compel a carrier to comply with the Act only after giving the carrier notice of the investigation and an opportunity for a proceeding.
 
 
 13
 Even if we found Sec. 10762 to be ambiguous on the issue of rejecting effective tariffs, we would resolve the ambiguity in favor of the Commission only if its construction 'enhance[d] the general policies underlying the legislation.' Zuber v. Allen, supra, 396 U.S. at 192-93, 90 S.Ct. at 327-28. Although the Commission's purpose of bolstering consumer protection in the face of budgetary restraints is consonant with the policies of the Act, the means undercuts the Act's goal of market stability and strict application of filed rates, National Pressed Steel Co. v. Alabama G.S.R. Co., 289 ICC 673, 683 (1953), by introducing an element of uncertainty in the transportation market.
 
 
 14
 Carriers, desiring to respond quickly to market conditions, must still wait 20 or 30 days for rate changes to take effect under the statutory scheme to allow time for public comment or complaint. When the tariff becomes effective carriers and shippers alike rely upon those rates to market their goods and services. Under the new tariff review procedure no one can be certain a rate will be applicable for at least 60 days.[12] The Commission has in effect extended the public notice period by 60 days.
 
 
 15
 Also unsettling is the retroactive effect of striking the tariff from the Commission's files. The carrier may be forced to repay substantial sums of money collected before the Board strikes the tariff with little or no opportunity for a hearing.[13]
 
 
 16
 The Commission's position that it may reject effective tariffs for violations of Sec. 10762 is inconsistent with its prior decisions. In a long line of cases where shippers brought formal complaints of overcharge on grounds that the current tariff had been improperly established, the Commission held that the applicability of tariffs or rates does not depend upon strict compliance with the Commission's publication rules. A tariff not rejected by the Commission is a valid tariff. Ennis, Brown Co. v. Atchison, Topeka & Santa Fe R. Co., 39 ICC 209, 210 (1916); Bacon Bros. v. Alabama Great Southern R. Co., 263 ICC 587, 590 (1945); Atlantic Commission Co. v. Bangor & Aroostook R. Co., 266 ICC 651, 668 (1946); Acme Peat Products, Ltd. v. Akron, Canton & Youngstown R. Co., 277 ICC 641, 644 (1950); Heavy and Specialized Carriers Tariff Bureau v. U.S.A.C. Transport, Inc., 302 ICC 487, 488 (1957); Phillips Petroleum Co. v. Akron, Canton & Youngstown R. Co., 308 ICC 257, 260 (1959); Western Peat Co., Ltd. v. Great Northern R. Co., 308 ICC 541, 544 (1959); Shobe, Inc. v. Bowman Trans., Inc., 350 ICC 664, 669-71 (1975). Some exceptions to this principle exist, as where the carrier has increased rates on less than statutory notice, Chicago, M. St. P. & P. R. v. Alouette Peat Products, 253 F.2d 449 (9th Cir. 1957) or where a procedural defect is coupled with another violation, such as an increase in rates above an amount set by the Commission, H. J. Baker & Bros. Inc.--Statute of Limitations, 357 ICC 640 (1978).[14] These cases present more compelling examples of the Commission's need to take drastic action against carriers after a formal hearing, but they do not support the Commission's contention that it has the right to reject without a formal hearing any effective tariff that violates its publishing regulations.
 
 
 17
 In only one case has the Commission directly asserted the authority to reject tariffs after their effective date. In Acme Fast Freight, Inc. Common Carrier Application,i, 17 MCC 549, 556-57 (1939) sustained, 30 F.Supp. 968 (S.D.N.Y.1940), aff'd, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993 (1940), the Commission stated:
 
 
 18
 If tariffs are unlawful, . . . they may not lawfully be used, [and] have no proper place in our files. If we are not bound to accept them and if we should accept them upon misapprehension, or inadvertently without examination or without determination as to whether they are proper subjects for filing, we may later reject them and strike them from our files.
 
 
 19
 A careful review of the facts in Acme Freight and the cases upon which the Commission relied to support its position in Acme reveals that the Commission struck the tariff involved for jurisdictional reasons, not procedural errors. The Commission found that Acme Freight was a freight forwarder not subject to the Interstate Commerce Act rather than a common carrier which must file its tariffs with the Commission. Accord: Wharfage, Handling, and Storage Charges at Municipal Terminals, Norfolk, Va., 59 ICC 488 (1920), Mercer Valley R. Co. v. Pa. R. Co., 69 ICC 233 (1922). In addition, the Commission did not suggest that the tariffs should be stricken without a formal hearing procedure.
 
 
 20
 The Commission refers to its dilemma created by a shrinking budget and a growing number of tariff submissions, but the Commission is 'no more authorized than are the courts to rewrite acts of Congress.' Talley v. Mathews, 550 F.2d 911 (4th Cir. 1977), cited in Louisiana Chemical Association v. Bingham, 657 F.2d 777 at 779 (5th Cir. 1981).
 
 
 21
 The Commission's orders of October 5, 1979 and October 1, 1980 are REVERSED.
 
 
 
 [1]
 Section 10762(b)(1)(E) requires tariffs to identify plainly any rules that change, affect, or determine any part of the published rate. A (symbol) or (A) indicates an increase, a (symbol) or (R) means a reduction and a (symbol) or (C) denotes a change which results in no net increase or decrease in rates. 49 C.F.R. Sec. 1310.6(n)(6)
 
 
 [2]
 49 U.S.C. Sec. 10762(e) provides:
 The Commission may reject a tariff submitted to it by a common carrier under this section if that tariff violates this section or regulation of the Commission carrying out this section.
 
 
 [3]
 The Commission may also suspend the effective date of a proposed tariff pending an investigation into its lawfulness. Generally the subject of the investigation is the reasonableness of the rate. 49 U.S.C. Secs. 10707, 10708
 
 
 [4]
 A tariff is unlawfully established if it omits or improperly uses symbols; contains typographical errors that prevent proper tariff application; contains erroneous cancellations; violates Commission regulations or orders or statutory provisions; purports to change rate schedules that have been in effect less than 30 days; contains duplicating rate schedules; or if the carrier gives less than the statutory notice
 
 
 [5]
 Although the regulations provide for informal proceedings before the Tariff Integrity Board as well as other employee boards, 49 C.F.R. Sec. 1100.225(a), the regulations appear to permit the Board to reach a decision after reviewing the pleadings without any hearing. 49 C.F.R. Sec. 1100.22a(e)(2)
 
 
 [6]
 The regulations do not list any other remedial power
 
 
 [7]
 The Commission adopted the automatic stay provision in response to intervenor Southern and Eastern Territory Railroads' petition for reconsideration. Order of October 1, 1980
 
 
 [8]
 Petitioners also argue that the Commission abandoned its long-standing program of comprehensive tariff examination without notice and opportunity to comment under the Administrative Procedures Act, 5 U.S.C. Sec. 553. Petitioner National Motor Freight Traffic Association, Inc. contends that the application of the new procedure to its publication of freight classifications, or groupings of commodities which are given similar rates, is arbitrary and capricious because symbolization errors are often unavoidable when classifications are amended
 
 
 [9]
 The Commission described the Board's purpose as determining if a tariff has been unlawfully established 'for which the tariff would have been subject to rejection had the violation been detected before the tariff became effective.' 49 C.F.R. Sec. 1011.6(i)
 
 
 [10]
 When Congress revised the Act in 1978 it substituted the word 'submitted' for 'filed' for clarification. U.S.Code Cong. & Adm.News (1978) at 3116
 
 
 [11]
 We recognize that the Delta Air Lines, Inc. v. CAB holding is not completely applicable to our case because of its different facts. The Board had rejected both proposed and effective tariffs because of the airlines' refusal to carry hazardous materials. The court found that the Board could not even reject proposed tariffs on this ground, let alone effective ones, without hearing evidence on the economic cost of transporting hazardous materials. In our case, however, the Commission's authority to reject a proposed tariff for publishing errors with no procedure rights provided to the carrier is unquestioned. Still, the discussion in Delta Air Lines is pertinent for the distinction the court draws between proposed and effective tariffs
 
 
 [12]
 The pleadings process then takes another 20 days. The Board is not under any time limit to render a decision
 
 
 [13]
 We need not address whether through formal hearing procedures the Commission may strike a tariff retroactively for procedural publishing errors
 
 
 [14]
 In H. J. Baker & Bros. Inc., the carriers increased their rates 14% for Canadian shipping where the Commission had only authorized a 12% increase for export-import traffic. When actions for overcharges were brought by numerous shippers the Commission determined that the shippers were only entitled to a refund of 2%--the difference between the rate charged and the maximum rate the carriers could have charged. See Genstar Chemical Ltd. v. ICC, 665 F.2d 1304 (D.C.Cir.1981). The Court of Appeals upheld the Commission's decision even though the shippers argued that the tariff increase had been unlawfully established in violation of the Commission's order (authorizing only a 12% increase) and thus the old tariff remained in effect. The court recognized that tariffs on file should not be treated as nonexistent merely because of some element of substantive unlawfulness or irregularity in tariff filing formalities. Id. at 1308